EDGAR REED II AND MARY JANE REED, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Reed v. Commissioner
Docket No. 8706-83.
United States Tax Court
T.C. Memo 1986-213; 1986 Tax Ct. Memo LEXIS 399; 51 T.C.M. (CCH) 1078; T.C.M. (RIA) 86213; May 27, 1986. *399 Held: Petitioners' theft loss deduction determined; deduction for "lost use" of funds and loss of anticipated income denied; and petitioners' deduction for attorney fees paid in connection with grand jury investigation allowed. Edgar Reed II, pro se. *400 Albert A. Balboni, for the respondent. WHITAKER
MEMORANDUM OPINION WHITAKER, Judge: Respondent determined a deficiency of $300 in 1980 resulting from disallowance of a $1,371 theft loss deduction claimed by petitioners. [1] By amended petition, petitioners claimed increased casualty and theft loss deductions in excess of $13,000, a deduction for 7-1/2 years "lost use" of funds which petitioner's former employer failed to pay promptly under a profit-sharing and retirement plan, and a deduction for loss of anticipated income resulting from petitioner's former employers' refusal to pay the amounts purportedly required under a 1969 "key management" agreement. Petitioners' entitlement to each of these deductions is in issue. Additionally, whether petitioners are entitled to a deduction for attorney's fees of $1,211.20 paid during 1980 was placed in issue during trial. For convenience, our Findings of Fact and Opinion are combined. Some of the facts have been stipulated *401 and are so found. The stipulations of fact and attached exhibits are incorporated herein by this reference. Petitioners resided in Worcester, Massachusetts, when their petition was filed. The alleged casualty and theft losses arose from petitioner's drawn out and acrimonious dispute with Reed & Prince Manufacturing Company (Reed & Prince). These losses relate to three categories of personal property: (1) property removed from petitioner's office in 1976; (2) property which was the subject of a state action instituted by petitioner against Reed & Prince in 1980; and (3) property which petitioner, in 1980, discovered had been lost while stored on Reed & Prince's business premises but which was not the subject of his state action. Petitioner was first employed by Reed & Prince, a family business manufacturing screws, nuts, and bolts, in 1946. He became president of Reed & Prince in 1963 and remained so until removed from office on April 5, 1976. Petitioner and/or his family were major shareholders of Reed & Prince throughout this period and petitioner served as a director even after he had been replaced as president. In 1974, pursuant to action by the Board of Directors, a *402 large amount of Reed & Prince stock was sold to four top managers. This resulted in a shift to these individuals of control of Reed & Prince. Thereafter, these managers tried a number of techniques to force petitioner out of the business and to persuade him to sell his stock. These techniques included locking him out of his office for a brief time in February 1976 and, on March 30, 1976, permanently evicting him from his office and removing the contents of said office, including certaipn personal property and records, to an unknown location. Despite repeated requests for his office possessions, with the exception of some records returned in September 1978, petitioner was unable to recover the items removed from his office. Petitioners claimed a loss on their 1980 return for a desk, antique cupboard, and an antique photograph of the founder of Reed & Prince which were removed from petitioner's office in 1976. At the time of trial, petitioner had been advised by the individual who had replaced him as president of Reed & Prince that the antique photograph was in the corporate offices but would not be turned over to petitioner until he offered some proof of ownership. [2] Petitioner *403 did not know what had happened to the desk and antique cupboard, i.e., if they were also in Reed & Prince's possession. As each of these items had assertedly been inherited, petitioner, through conversations with his lawyer, estimated the amount of theft loss attributed to them to be $500. We sustain respondent's disallowance of a theft loss deduction in 1980 representing the desk, antique cupboard, and antique photograph. As a predicate to any theft loss, a taxpayer must prove he was the owner of the property stolen. Draper v. Commissioner,15 T.C. 135 (1950); Lupton v. Commissioner,19 B.T.A. 166 (1930). [3] The current management of Reed & Prince apparently challenge petitioner's ownership of these items and petitioner failed to offer any proof that he had, in fact, inherited these antiques. Even if we ignore this shortcoming, *404 petitioner would not be entitled to a theft loss deduction for these items in 1980. In the case of a theft loss, a taxpayer is entitled to a deduction in the year in which the theft is discovered. Sec. 165(e); [4]sec. 1.165-1(d)(3), Income Tax Regs. If Reed & Prince's removal of the desk, cupboard, and photograph from petitioner's office in 1976 constituted a theft, the appropriate year to claim a deduction was 1976 rather than 1980. As petitioner was present when the appropriation of his office furnishings occurred, he was indisputedly aware of the "theft" in the earlier year. As a final basis for disallowing any deduction for these items, petitioner has failed to carry his burden of proving his basis in the purportedly stolen property. To qualify for a theft loss deduction, a taxpayer must establish his basis in inherited property before such loss can be determined. United States v. Lattimore,353 F.2d 379, 381 (9th Cir. 1965). Petitioner has failed *405 to do so. During the 30 years petitioner was employed by Reed & Prince, he stored various items of personal property on the company's premises including an antique racing car and trailer, two antique electric trucks, various automobile parts and accessories, e.g., four tires, and other miscellaneous items. When petitioner's employment with Reed & Prince ended in 1976, these items were stored in an unused area in the top floor of the company's plant. Sometime between petitioner's termination as an officer and employee and early 1980, petitioner's personal property was moved from storage in the plant building to a shed in the plant yard and, shortly thereafter, to a loading platform where it was subject to damage from exposure to the elements, vandalism, and/or theft. During this period, *406 petitioner made numerous demands on the directors of Reed & Prince and in shareholder meetings for the return of his personal property. These demands were ignored and petitioner took no other formal or informal action to retrieve his property. On March 29, 1980, petitioner and his attorney were permitted to return to Reed & Prince's premises to retrieve his personal property. They discovered that the antique car was severely damaged due to exposure and vandalism and other items were similarly damaged or missing. On April 6, 1981, petitioner instituted a civil action is state court against Reed & Prince seeking a judgment of $15,000 as recompense for damage to and loss of specified items of personal property. On June 20, 1983, judgment was entered for Reed & Prince based on the finding that, although at some time during the 4-year period that petitioner's personal property was stored on Reed & Prince's premises it was damaged or disappeared, there was no agreement as to storage and Reed & Prince had violated no duty owed to petitioner. Petitioner's appeal was pending at the time of trial. The casualty and theft loss deductions petitioner now claims include those items of personal *407 property which are the subject of that appeal. As petitioners correctly noted on the attachment to their 1980 return, deduction for casualty and theft losses for the items of personal property which were the subject of the state suit could not be claimed. "[N]o portion of the loss with respect to which reimbursement may be received is sustained * * * until the taxable year in which it can be ascertained with reasonable certainty whether or not such reimbursement will be received." Sec. 1.165-1(d)(3), Income Tax Regs. In 1980, petitioners' state suit against Reed & Prince for damages for casualty and theft losses suffered was still pending. Therefore, in that year, petitioners still had a reasonable prospect of recovery which would compensate them for their losses. Dawn v. Commissioner,675 F.2d 1077, 1078, (9th Cir. 1982); Estate of Scofield v. Commissioner,266 F.2d 154, 159-160 (6th Cir. 1959). Consequently, petitioners are not entitled to the casualty and theft loss deductions raised during trial for the personal property *408 which was the subject of the state court action and, as of the date of trial, the subject of the state court appeal. On petitioners' 1980 return, they also claimed a deduction of $1,371 for personal property stolen from storage at Reed & Prince. This amount represented four tires and tubes, water skis, aluminum valve covers, two casement windows, a front door, and the desk, antique cupboard, and antique photograph removed from petitioner's office. We have already addressed, and sustained, respondent's disallowance of a loss deduction for the desk, antique cupboard, and photograph. The remaining items were missing when petitioner and his attorney sought to retrieve the property stored at Reed & Prince in 1980. They were not, however, included in petitioner's state suit against Reed & Prince. To be deductible under section 165(a), "a loss must be evidenced by closed and completed transactions, fixed by identifiable events, and * * *, actually sustained during the taxable year." Sec. 1.165-1(b), Income Tax Regs. As 1980 was the year the theft loss was discovered, *409 it is the appropriate year for deduction of this item. Sec. 165(e); sec. 1.165-1(d)(3), Income Tax Regs. A theft loss deduction is limited to the lesser of the fair market value of the property or petitioner's adjusted basis in the property. See secs. 1.165-8(c) and 1.165-7(a)(1) and (b)(1), Income Tax Regs.; Ternovsky v. Commissioner,66 T.C. 695, 697-698 (1976). In order to establish their entitlement to the claimed deduction, petitioners must prove not only the fact of loss, but the value of that loss. Burnet v. Houston,283 U.S. 223 (1931); Roberts v. Commissioner,62 T.C. 834, 835, 839 (1974); Elliott v. Commissioner,40 T.C. 304, 311 (1963). On the attachment to petitioners' 1980 return they listed the following amounts as the cost bases of the items of personal property for which they claimed a deduction: Four tires and tubes
[5] $356
Pair of water skis
$65
Aluminum valve covers
$50
Two casement windows
and front door
$400
The only evidence of the above asserted cost bases is petitioner's testimony. He could not recall the price he paid for the *410 tires and tubes but looked up the cost of new tires in a magazine to arrive at the $356 figure. In valuing the pair of water skis, petitioner figured the cost of materials as he had made these skis. For the aluminum valve covers, petitioner testified that he remembered the cost of these covers when he bought them in 1952. Petitioner estimated the cost basis of the two casement windows at $300 and valued the front door, which had been beaten up during a house break-in at $100. Petitioner arrived at the cost basis for the windows and front door through conversations with his lawyer. In the absence of specific evidence, we will apply our best judgment to approximate the cost basis of these items, Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). We conclude that petitioners are entitled to a theft loss deduction of $200 for the used tires and tubes, $65 for the water skis, $50 for the aluminum valve covers and $300 for the casement windows and door, totaling $615. Commencing in 1973, Reed & Prince implemented an Employee Profit-Sharing *411 and Retirement Plan (Plan). This Plan provided that, in the event of termination, petitioner was entitled to receive all of the contributions which had been made by Reed & Prince to petitioner's employee account. The balance in said account as of December 31, 1980 was $20,248.79. [6] Under the terms of the Plan, upon his termination, petitioner should have received a payment of the lump sum in his account or provision for a fixed number of periodic payments or for a life annuity contract or a combination of these three methods of payment should have been instituted. At an unspecified date prior to trial, petitioner did, in fact, receive the amounts due him under the Plan. [7] Although he had received payment prior to trial, petitioner still sought an unspecified loss stating that "I feel that I should have equal treatment with other people who terminated at Reed & Prince and got their termination immediately." Petitioner's rationale for claiming a deduction in 1980 for lost use over a period of 7-1/2 years was that he "had to put it in sometime." *412 Petitioner asserts that he had lost 7-1/2 years of use of the money due him under the Plan. However, during this period amounts earned from investment of the principal in petitioner's account were credited to said account. Apparently he received, and his account was credited with, income from the "use" of funds in his account for each of the 7-1/2 years during which Reed & Prince held these funds. Consequently, he suffered no loss. Even if Reed & Prince had not so credited petitioner's account, he would not be entitled to a loss deduction. Deductions are a matter of legislative grace and taxpayers may not create deductions where none exist. New Colonial Ice Co. v. Helvering,292 U.S. 435, 440 (1934). The Internal Revenue Code does not provide a deduction for the "lost" use of money. [8] During trial petitioner also asserted he suffered a loss due to the failure of Reed & Prince to honor a 1969 "key management" agreement. The terms of this agreement provided that, upon termination, Reed & Prince was to pay petitioner $2,000 a month for 120 months commencing when he *413 reached the age of 55. [9] The purported copy of this agreement received in evidence is signed by both petitioners. Although the document states that the corporate seal is affixed and that it is executed on Reed & Prince's behalf by Walter T. Nelson, neither the seal nor Nelson's signature appear on the exhibit. Nor were any minutes of the Board of Directors of Reed & Prince authorizing such an agreement offered in evidence and we question whether the agreement was ever bindingly executed. Petitioner never made any formal claim on Reed & Prince for payment under the agreement nor has he pursued any legal avenues for collection. [10] Petitioner's rationale for claiming a loss based on this agreement is that he received no payments under the agreement, realized that there was no further sense in trying to work with Reed & Prince to collect under the agreement, and "had to enter it somewhere." Even if the Agreement was enforceable, petitioner is not entitled to a deduction for Reed & Prince's failure to honor it. A deduction for the loss of anticipated income is not permitted. Hort v. Commissioner,313 U.S. 28 (1941); *414 Hutcheson v. Commissioner,17 T.C. 14 (1951); Collin v. Commissioner,1 B.T.A. 305 (1925). As to this agreement, petitioner's recourse, if any, is a suit against Reed & Prince, not the deduction he now claims. In early 1980, petitioner was advised by an attorney with the Department of Justice that Reed & Prince was the subject of a grand jury investigation into possible antitrust violations. The investigation of Reed & Prince dealt with activities which occurred in 1963 and thereafter. Petitioner was not a target of the investigation. Based on instructions he received from an unidentified government lawyer, petitioner retained an attorney to advise him in connection with his appearance before the grand jury. This attorney performed various work for petitioner including *415 review of documents, participation in numerous telephone conversations with petitioner and others, and attending informal interviews and conferences with government attorneys. The attorney submitted a bill for $1,211.20 for services rendered which petitioners paid during 1980. Petitioners did not claim any deduction for legal fees on their 1980 return because petitioner erroneously believed he might be entitled to reimbursement for these expenses by Reed & Prince. However, he was not entitled to reimbursement. The deductibility of these attorney's fees under section 162(a) was initially raised during trial. Section 162(a) allows a deduction for all ordinary and necessary expenses of carrying on a trade or business. Respondent challenges petitioners' deduction for attorney's fees paid approximately 3-1/2 years after petitioner was removed as president of Reed & Prince arguing that such fees were not "ordinary and necessary" to petitioner's business in 1980. We disagree. Petitioner's role as an officer and director of Reed & Prince from 1968 until mid-1976 constituted his trade or business *416 in those years. Hochschild v. Commissioner,161 F.2d 817 (1947); Steffens v. Commissioner,T.C. Memo. 1984-592. The grand jury investigation focused, in part, on events during those years and it is petitioner's activities during that period with which we must be concerned. Compare United States v. Gilmore,372 U.S. 39 (1963) with Kornhauser v. United States,276 U.S. 145 (1928). [11] Petitioner's involvement in the grand jury investigation, and the attorney's fees incurred and paid in connection therewith, were the proximate result of petitioner's business during the years he served as president and a director of Reed & Prince. To be deductible, this expense must also be ordinary and necessary to petitioner's business. Involvement in governmental investigations of the conduct of an industry, and/or the firms comprising an industry is, in many sectors, "normal, usual, or customary." While testifying before a grand jury was not a recurring activity for petitioner, it does not follow that expenses incurred therewith were not "ordinary" within the meaning of section 162(a). Welch v. Helvering,290 U.S. 111 (1933); *417 Salt v. Commissioner,18 T.C. 182 (1952). We find petitioner's attorney's fees were an ordinary and necessary business expense. See also Commissioner v. Tellier,383 U.S. 687 (1966). They are therefore, deductible in 1980, the year before the Court. Decision will be entered under Rule 155.
Footnotes
1. Mary June Reed is a petitioner in this case solely by virtue of having filed a joint Federal tax return with Edgar Reed II for 1980. As used herein, "petitioner" refers to Edgar Reed II.↩
2. Petitioner asserts that because his personal records were included in the materials appropriated from his office at Reed & Prince, he is unable to substantiate his ownership of any of the items for which he claims a loss.↩
3. Jensen v. Commissioner,T.C. Memo. 1979-379; Silverman v. Commissioner,T.C. Memo. 1975-255, affd. without published opinion 538 F.2d 320 (3d Cir. 1976); Whiteman v. Commissioner,T.C. Memo. 1973-124↩. 4. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
5. Although this amount was increased to $388 in petitioners' Amended Petition, no explanation for the increase was given.↩
6. An unspecified portion of this balance was earned due to investment of the company's contributions after petitioner's employment terminated. For example, the balance as of December 31, 1979 was $18,735.08 and the amount of gain during the year from investment was $1,513.71 which amount was credited to petitioner's account. ↩
7. Petitioner credited the IRS "helping him out" as the reason for his ability to finally obtain payment from Reed & Prince.↩
8. See, e.g., Crossland v. Commissioner,T.C. Memo. 1976-59↩, wherein a deduction for decline in the purchasing power of the dollar due to inflation was disallowed. 9. Petitioner was 55 years old on January 21, 1979. ↩
10. Petitioner stated that he has not pursued possible legal remedies since he has been unable to find a lawyer who would handle the case.↩
11. See also Bellows v. Commissioner,T.C. Memo. 1967-199; Miller v. Commissioner,↩ a Memorandum Opinion of this Court dated July 21, 1943.